JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Jonelle Thomas, appeals from the judgment of the Cuyahoga County Court of Common Pleas, rendered after a bench trial, finding him guilty of burglary of an occupied structure, in violation of R.C. 2911.12(A)(3), and sentencing him to one year incarceration. For the reasons that follow, we affirm.
 JURY WAIVER {¶ 2} The record reflects that appellant's case was called for trial on October 10, 2002. On that date, prior to trial, appellant appeared in court and informed the trial judge that he wished to waive his right to a jury trial. The trial judge questioned appellant regarding his intention and, after ascertaining that he was knowingly and voluntarily waiving his right to a jury trial, stated:
 {¶ 3} "The court is therefore going to hand to Mr. Maniker, I have a written waiver of jury trial and the Court will make an oral finding on the record that indeed the defendant did knowingly, voluntarily and intelligently waive and relinquish his right to a jury trial.
 {¶ 4} "If you'll sign that we will have that properly stamped and filed and we will proceed to trial. In the meantime I'm going to go back and excuse the jury. And you'll give a copy of that to [the bailiff]. We'll resume in just a few moments so stay where you are." The record reflects that a recess was then taken.
 {¶ 5} In his first assignment of error, appellant contends that the trial court lacked jurisdiction to proceed to trial without a jury because (1) appellant did not sign the jury waiver in open court but, rather, during a recess from trial; (2) even if there was no error in signing the waiver during a recess, the trial court did not acknowledge appellant's signature on the form in open court; and (3) the trial court's journal entry setting forth the jury waiver was not filed until October 18, 2002, eight days after the trial had ended.
 {¶ 6} Appellant bases his arguments on State v. Pless (1996),74 Ohio St.3d 333, in which the Ohio Supreme Court held that a trial court lacks jurisdiction to try a defendant without a jury absent strict compliance with the jury waiver requirements of R.C. 2945.05.
 {¶ 7} Initially, we note that, as this court explained in Statev. Franklin, Cuayahoga App. No. 81426, 2003-Ohio-2649, ¶ 7:
 {¶ 8} "[A]ny defect in applying the Pless requirements is a defect in the trial court's exercise of its jurisdiction and not a lack of subject matter jurisdiction in the first instance. Consequently, if a trial court acts beyond its statutory authority by trying a defendant without complying with the jury waiver requirements of R.C. 2945.05, that defendant's conviction may be voidable, but it is not void ab initio for lack of subject matter jurisdiction."
 {¶ 9} Crim.R. 23(A) provides that a criminal defendant may knowingly, intelligently and voluntarily waive in writing his right to trial by jury. See, also, State v. Bays (1999),87 Ohio St.3d 15, 19, citing State v. Ruppert (1978), 54 Ohio St.2d 263,271. The manner in which a defendant may effect such a waiver is governed by R.C. 2945.05, which provides, in relevant part:
 {¶ 10} "In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof. ***
 {¶ 11} "Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has opportunity to consult with counsel."
 {¶ 12} Thus, R.C. 2945.05 requires that a jury waiver be in writing, signed by the defendant and filed in the case and made a part of the record.
 {¶ 13} Appellant first complains that the jury waiver was not signed in open court. Crim.R. 23(A) and R.C. 2945.05 are satisfied when, after arraignment and opportunity to consult with counsel, defendant signs a written statement affirming that he or she knowingly and voluntarily waives his or her constitutional right to a trial by jury and the court reaffirms this waiver in open court. State v. Ford, Cuyahoga App. Nos. 79441 and 79442,2002-Ohio-1100, citing State v. Walker (1993),90 Ohio App.3d 352, 258.
 {¶ 14} It is not necessary that the waiver be signed in open court to be valid, so long as the trial court engages in a colloquy with the defendant extensive enough for the trial judge to make a reasonable determination that the defendant has been advised and is aware of the implications of voluntarily relinquishing a constitutional right. Id.; State v. Huber, Cuyahoga App. No. 80616, 2002-Ohio-5839, citing State v. Gammalo
(July 5, 2001), Cuyahoga App. Nos. 78531.
 {¶ 15} Here, the record reflects that the trial judge asked appellant whether he understood that he had a constitutional right to trial by a jury and that by waiving that right the court, rather than a jury, would make the decisions of law and the findings of fact regarding appellant's guilt or innocence, and whether appellant wished to waive that right. Upon appellant's affirmative response, the trial judge concluded that he had knowingly and intelligently waived his right to a jury trial and instructed him to sign the written jury waiver form. We find this colloquy sufficient to satisfy the statute's open-court requirement.
 {¶ 16} Appellant also contends that the trial court did not obtain a proper waiver of his right to a jury trial because it did not acknowledge his signature on the jury waiver form in open court after he had signed it. We are not persuaded. Although the better practice on facts such as these would be for the court to acknowledge the defendant's signature on the record after he has signed the jury waiver form, we do not find the trial court's failure to do so in this case reversible error.
 {¶ 17} R.C. 2945.05 requires:
 {¶ 18} "that there must be further evidence on the record, in addition to the signed writing, that a defendant has voluntarily made an informed waiver of his constitutional right to a trial by jury. *** A defendant must sign a written statement affirming that he is knowingly and voluntarily waiving his constitutional right to a trial by jury, uninfluenced by promises or threats of any kind. Additionally, there must occur, in open court, a colloquy between the trial judge and the defendant himself, extensive enough for the judge to make a reasonable determination that the defendant has been advised and is aware of the implications of voluntarily relinquishing a constitutional right." State v. Walker (1993), 90 Ohio App.3d 352, 358.
 {¶ 19} The record reflects that both were done in this case. The trial judge carefully examined appellant, explained his rights and determined that his action in seeking the waiver was knowingly, intelligently and voluntarily made. In addition, our review of the record shows that the waiver is contained in and made a part of the record in this case. It bears the signature of appellant, which is attested to by trial counsel in this case. Moreover, we note that neither appellant nor his trial counsel objected to the commencement of trial after he signed the jury waiver form or asserted at trial that appellant had not signed the form. Accordingly, in light of these facts, we hold that the trial court sufficiently complied with the requirements of R.C.2945.05.
 {¶ 20} Finally, appellant contends that the trial court lacked jurisdiction because the journal entry setting forth his jury waiver was not filed until October 18, 2002, after trial had concluded.
 {¶ 21} As this court has repeatedly made clear, strict compliance with R.C. 2945.05 is met upon filing the jury waiver; there is no rule pertaining to when the filing must occur. Statev. Franklin, Cuyahoga App. No. 81426, 2003-Ohio-2649, ¶ 15, citing State v. McKinney (Dec. 26, 2002), Cuyahoga App. No. 80991; State v. Sekera (Oct. 31, 2002), Cuyahoga App. No. 80690.
 {¶ 22} "R.C. 2945.05 only requires that the waiver occur before trial and that the waiver is filed, time-stamped and contained in the record. See State v. Pless (1996), 74 Ohio St.3d 333; Statev. Gipson (1998), 80 Ohio St.3d 626. There is no requirement thatthe waiver be filed and placed in the record before trial. SeeState v. Jones (Feb. 5, 1999), Hamilton App. No. C-980270." (Emphasis added.) State v. Antonic (Nov. 22, 2000), Cuyahoga App. No. 77678. Here, the record reflects that the jury waiver form signed by appellant was filed on October 10, 2002, the first day of trial. Thus, the jury waiver occurred before trial and the waiver form was filed, time-stamped and placed in the record. It is apparent that the jury waiver in this case met the requirements of R.C. 2945.05 and, accordingly, the trial court had jurisdiction to conduct a bench trial.
 {¶ 23} Appellant's first assignment of error is overruled.
 SUFFICIENCY OF THE EVIDENCE {¶ 24} In his second assignment of error, appellant challenges the sufficiency of the evidence supporting his conviction.
 {¶ 25} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v.Thompkins (1997), 78 Ohio St.3d 380, 390. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 26} Appellant was convicted of the offense of burglary of an occupied structure, in violation of R.C. 2911.12(A)(3). Pursuant to that statute:
 {¶ 27} "No person, by force, stealth, or deception, shall *** trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense."
 {¶ 28} At trial, Linwood Hudson testified that when he locked his home in East Cleveland at approximately 10:00 p.m. on March 7, 2002 and left for work, nothing was out of order in his house. Hudson testified that when he returned at approximately 3:30 p.m. the next day, he discovered that the glass on the security door had been "picked in," the inner door had been kicked in and shattered, and the alarm had been ripped off the wall and was hanging by a wire. Upon inspecting his bedroom, Hudson found that the mattress had been pulled off the bed and all of the contents of his dresser drawers had been dumped on the floor. Upon further inspection, Hudson discovered that his small hand-held camcorder and a jar full of change were missing.
 {¶ 29} Hudson called the police and filed a police report. Several days later, as he was cleaning up the mess in his bedroom, Hudson discovered a prison photo identification card with appellant's name and picture on it in the pile of clothes on the floor. Hudson testified that the photo identification card had not been in his bedroom prior to the break-in and, further, that he did not know appellant and had not given him permission to enter his home. Hudson identified State's Exhibit 1 as the identification card that he found in his bedroom.
 {¶ 30} Approximately one week after the break-in, Hudson saw appellant standing on a street corner in the neighborhood with several other males. Two weeks after that, Hudson drove by a street corner in the neighborhood where a group of males were hanging out. Hudson observed one male filming the other males with Hudson's camcorder. Hudson also saw appellant standing on the other side of the street, talking to someone.
 {¶ 31} Hudson testified that he got out of the van, walked up to the male with the camcorder, and told him that the camcorder belonged to him and he wanted it back. When the individual refused to give it back, Hudson turned and pointed to appellant, who was looking at him, and said, "that motherfucker right there broke into my house and took my camcorder and I want it back." The male eventually gave Hudson back his camcorder. When Hudson turned around again after retrieving his camcorder, appellant was gone.
 {¶ 32} East Cleveland Detective Joseph Marche testified that he interviewed appellant after he was arrested in July 2002 and obtained a written statement from him, which Marche read into the record. The statement indicated that when Marche asked appellant about the break-in at Hudson's house, appellant told Marche that someone whose name he could not recall had told him that he "must be one of the stupidist criminals in the world" because Hudson had found appellant's prison identification card in his house after the burglary. Appellant told Marche that a few days after his release from prison in February 2002, he and "a whole bunch of dudes were wrestling in front of the Fire Department on Shaw Avenue." According to appellant, the police came to break up the melee and after they left, he noticed that he had lost his prison identification card, keys and approximately $60 during the fight. Appellant told Marche that he did not report the losses to the police, however. Appellant also told Marche that several years prior to the break-in, he had been to Hudson's house with a female friend who used to live there. Finally, appellant denied that he ever had in his possession a camcorder that did not belong to him.
 {¶ 33} Marche testified that he showed appellant the photo identification card that Hudson had found in his house and appellant identified it as the card he had lost.
 {¶ 34} Appellant contends this evidence was insufficient to establish that he was the perpetrator of the burglary. According to appellant, the State did not produce evidence showing that he was in possession of the identification card at the time of the robbery. Appellant also contends that the State did not establish any connection between him and the stolen camcorder because he was not in the group of individuals who were using the camcorder when Hudson demanded its return. According to appellant, the fact that Hudson pointed at him and accused him of stealing the camcorder does not mean that he was actually the perpetrator.
 {¶ 35} It is well settled that circumstantial evidence and direct evidence inherently possess the same probative value.State v. Treesh, 90 Ohio St.3d 460, 485, 2001-Ohio-4. A conviction based on purely circumstantial evidence is no less sound than a conviction based upon direct evidence. State v.Apanovitch (1987), 33 Ohio St.3d 19, 23. "[I]t is axiomatic that criminal conduct may be and, in many instances, can only be proved by circumstantial evidence." Id., quoting State v. Graven
(1978), 54 Ohio St.2d 114, 118.
 {¶ 36} Here, the State's case admittedly was built solely on circumstantial evidence. Viewing the evidence in a light most favorable to the prosecution, however, we find the evidence sufficient to support appellant's conviction.
 {¶ 37} Hudson testified that when he returned from work on March 8, 2002, he found the glass on the security door to his home broken, the lock on the inner door shattered and the alarm ripped off the wall. He also testified that he found appellant's identification card, which he was sure was not in his home prior to the break-in, in the heap of clothes dumped from his dresser onto his bedroom floor during the break-in but that he did not know appellant and had never given him permission to enter his home.
 {¶ 38} Hudson also testified that he observed appellant several times in his neighborhood: the first time one week after the break-in and the second time when appellant stood across the street from a group of males who were using Hudson's stolen camcorder. He testified further that appellant looked directly at him but then quickly disappeared after Hudson pointed to him as he stood on the street corner attempting to retrieve his stolen camcorder from the group of males who were using it.
 {¶ 39} Detective Marche testified that appellant identified the identification card found in Hudson's house after the break-in as his card.
 {¶ 40} Viewing this evidence in a light most favorable to the prosecution, it is apparent that the trier of fact could have found, by drawing reasonable inferences from the evidence, that appellant entered Hudson's home by force with the intent to steal from him. Appellant's several appearances in the neighborhood shortly after the break-in, his close proximity to the group of males using the stolen camcorder, and his sudden disappearance from the street corner after Hudson pointed at him, coupled with the discovery of appellant's photo identification card in Hudson's home after the burglary, were sufficient circumstantial evidence from which the trier of fact could have concluded that appellant was the perpetrator of the burglary. Moreover, Hudson's testimony regarding the damage to the doors and the alarm system were sufficient to demonstrate that the burglar entered by force. Accordingly, the evidence was sufficient to establish all the elements of the offense charged.
 {¶ 41} Appellant's second assignment of error is therefore overruled.
 MANIFEST WEIGHT OF THE EVIDENCE {¶ 42} In his third assignment of error, appellant contends that his conviction is against the manifest weight of the evidence.
 {¶ 43} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. State v. Thompkins (1997),78 Ohio St.3d 380, 390. When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 44} Appellant contends that his conviction was against the manifest weight of the evidence because there was no "direct evidence" that he was the burglar. He also asserts that in light of the statement he gave to Detective Marche regarding how he lost his identification card, the jury could not have found beyond a reasonable doubt that he was the perpetrator. We disagree.
 {¶ 45} It is fundamental that the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Here, the judge heard appellant's explanation regarding how he lost his identification card when Detective Marche read appellant's statement into the record, but she apparently did not find appellant's explanation credible. There is nothing in this record to cause us to find otherwise.
 {¶ 46} Moreover, as noted in our analysis regarding assignment of error two, the State was not required to produce "direct evidence" that appellant was the perpetrator — circumstantial evidence has the same probative value as "direct evidence." Here, it is apparent that by drawing reasonable inferences from the circumstantial evidence presented at trial, the trier of fact could have concluded, beyond a reasonable doubt, that appellant broke into Hudson's house and stole his camcorder and jar of change. Accordingly, it cannot be said that the judge lost her way and created such a miscarriage of justice that appellant's conviction must be reversed.
 {¶ 47} Appellant's third assignment of error is overruled.
 POST-RELEASE CONTROL {¶ 48} In his fourth assignment of error, appellant contends that the post-release portion of his sentence should be vacated because the trial judge did not adequately explain to him the terms and conditions of post-release control.
 {¶ 49} After sentencing appellant to one year incarceration, the trial judge stated:
 {¶ 50} "Now that you have been sentenced, your sentence will also be subject to what they call post-release control, which is a parole period after incarceration. It is possible for up to three years.
 {¶ 51} "If you violate the terms of post-release control, you may look at additional time which could add up to as much as half of your sentence. So you understand that that may be a possibility. That is done by the Adult Parole Authority. ***"
 {¶ 52} Pursuant to R.C. 2929.19(B)(3)(d), a trial court must inform the defendant at sentencing or at the time of a plea hearing "that he may be subject to a definite period of post-release control [and] the possibility of sanctions, including prison, available for violation of such controls."State v. Morrissey (Dec. 18, 2000), Cuyahoga App. No. 77179.
 {¶ 53} Our review of the sentencing hearing transcript shows that the trial court complied with the notification requirements of R.C. 2929.19(B)(3). Appellant's assertion to the contrary is specious.
 {¶ 54} Appellant's fourth assignment of error is therefore overruled.
Judgment affirmed.
Colleen Conway Cooney, J., Concurs.
Frank D. Celebrezze, Jr., P.J., Concurs in Judgment only.