[Cite as *State v. Brooks*, 2023-Ohio-846.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220102 |
| | | TRIAL NO. B-2006667 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| JASON LAMONT BROOKS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: March 17, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Timothy J. McKenna* for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

**{¶1}** Jason Lamont Brooks appeals his convictions, after a bench trial, for four counts of felonious assault with firearm specifications and one count of improperly discharging a firearm into a habitation with firearm specifications. In three assignments of error, Brooks argues that the trial court erred by conducting a bench trial without an effective jury waiver and his convictions are not supported by sufficient evidence and are contrary to the manifest weight of the evidence. For the following reasons, we affirm the trial court's judgment.

## Factual Background

**{¶2}** Jason Lamont Brooks was indicted after firing a gun at the home of his former girlfriend, Nakaya Walton. At the time of the shooting, Nakaya, her mother Tiffany Walton, her sister Anaya Hudson, and her brother-in-law Dondre Hudson were all in the home. One of the bullets grazed Dondre's back.

**{¶3}** Brooks entered not guilty pleas, and the case was scheduled for a jury trial to begin on January 10, 2022. On January 10, the case was continued for a bench trial on February 24 at the "request of defendant" and with the court's consent. The entry of the continuance form was signed by defense counsel. On the morning of trial, defense counsel acknowledged his readiness to proceed to a bench trial.

**{¶4}** At the trial, Dondre testified that he and his wife Anaya drove to the home after receiving a phone call. When they arrived, Nakaya and Tiffany were outside arguing with Brooks and his two female companions. After Brooks and the two women went to their car, Anaya and he walked up to the front door. As they were about to enter the house, he heard gunshots. As they scrambled to enter the home, Dondre turned around and saw Brooks with a gun. After they were safely inside, they discovered that a bullet had grazed Dondre's back.

2

{¶5} Anaya testified that her sister Nakaya called her and told her that three people were outside of her home. Anaya and her husband went to the home. When they arrived, Anaya approached the porch where Nakaya, her mother Tiffany, and Brooks were arguing. Tiffany warned her that Brooks had a gun and asked her to go upstairs and get Tiffany's gun. Anaya went upstairs and looked out a window. She saw Brooks fire four shots. After he fired the gun, Brooks and the two women left.

{¶6} Nakaya testified that she had dated Brooks for nine or ten months. She had just returned from a trip to Las Vegas, and they had broken up while she was in Las Vegas. That night, Brooks called her and told her he was coming over. Brooks arrived with his two sisters. Brooks and his sisters wanted to fight, but her mother would not allow it. Nakaya saw Brooks fire the gun at the house while she was standing in the doorway.

{¶7} Tiffany Walton testified that she asked Brooks to leave when he arrived at her home. When Brooks and one of his sisters refused, Tiffany called 911. The 911 call was played. Tiffany can be heard saying that Brooks had a gun and asking someone to get her gun. Tiffany also relayed that Brooks was shooting at her house. Tiffany testified that Brooks fired the gun at the doorway when she and Dondre were trying to enter the house, and he shot at the window where Anaya was standing. Photos of the gunshot damage to the door and hallway were entered as exhibits.

{¶8} The following morning, the trial court wanted to ensure a jury waiver was properly executed before proceeding with the trial. The court showed Brooks the signed waiver and confirmed that Brooks had signed it. The judge explained that the waiver meant that a jury would not listen to the facts and determine whether he was guilty. Brooks understood and affirmed that he wished to waive that right, and he

signed the waiver of his own free will. Defense counsel did not wish to add anything to the record.

{¶9}    The trial continued, and the officers, who responded on the night of the shooting, testified. Officer Thomas Back testified that when he arrived, Brooks was gone. Back's body-camera video was admitted. Back found shell casings at the scene. When he learned Brooks's home address, Back sent an undercover officer to Brooks's home. Detective James Adams testified that he placed placards next to the two 45 caliber casings and one cartridge the officers found. Adams collected them and submitted them for testing. Detective James Delk testified that he responded to the hospital that night to interview Dondre. Dondre identified the shooter as his sister-in-law's boyfriend Jason.

{¶10}  The state rested, and the defense called Christopher Brooks to testify. Christopher testified that his son, Jason Brooks, was at his home that night watching boxing matches. Jason arrived around 8:00 p.m. The fights started at 9:00 p.m. and ended after midnight. Christopher went to bed at 1:00 a.m., and Jason was still at his home. Early the next morning, his daughter came over and informed them that there was a warrant for Jason's arrest. Jason went to the police station with his sister and was arrested. After Christopher's testimony, the defense rested.

{¶11}  The trial court found that the 911 recording corroborated the testimony of the victims, and that the state's witnesses were more credible than Brooks's father. The court found Brooks guilty and sentenced him to an aggregate term of five years.

## Jury Waiver

{¶12}  In his first assignment of error, Brooks argues that the trial court erred because it erroneously conducted a bench trial without an effective jury waiver.

4

Brooks contends that his jury waiver was not knowing, intelligent, or voluntary because it was not done before the bench trial started.

**{¶13}** A criminal defendant is guaranteed the right to a trial by jury. Sixth Amendment to the U.S. Constitution; Ohio Constitution, Article I, Section 5; *State v. Lomax*, 114 Ohio St.3d 350, 2007-Ohio-4277, 872 N.E.2d 279, ¶ 6. This right may be waived by the defendant pursuant to the procedures set forth in R.C. 2945.05 and Crim.R. 23(A). R.C. 2945.05 states:

> In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof. It shall be entitled in the court and cause, and in substance as follows: "I _____, defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a Judge of the Court in which the said cause may be pending. I fully understand that under the laws of this state, I have a constitutional right to a trial by jury."
>
> Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel. Such waiver may be withdrawn by the defendant at any time before the commencement of the trial.

**{¶14}** Crim.R. 23 provides, in relevant part:

> Trial by jury. In serious offense cases the defendant before commencement of the trial may knowingly, intelligently and voluntarily

waive in writing his right to trial by jury. Such waiver may also be made during trial with the approval of the court and the consent of the prosecuting attorney.

**{¶15}** The Ohio Supreme Court has held, "Absent strict compliance with the requirements of R.C. 2945.05, a trial court lacks jurisdiction to try the defendant without a jury." *State v. Pless*, 74 Ohio St.3d 333, 658 N.E.2d 766 (1996), paragraph one of the syllabus. "R.C. 2945.05 only requires that the waiver occur *before trial* and that the waiver is filed, time-stamped and contained in the record." (Emphasis added.) *State v. Thomas*, 8th Dist. Cuyahoga No. 82130, 2003-Ohio-6157, ¶ 22. "Unless the record demonstrates unequivocally that an oral waiver was given prior to trial, with a signed waiver presented to the court and included in the case record, the failure of the trial court to obtain the written waiver prior to the commencement of trial has been determined to be reversible error." *State v. Johnson*, 81 Ohio App.3d 482, 486, 611 N.E.2d 414 (10th Dist.1992), citing *State v. Harris*, 48 Ohio St.2d 351, 359 N.E.2d 67 (1976).

**{¶16}** In *Harris*, the Ohio Supreme Court held, "Where a defendant and his counsel waive the right to a jury trial and the cause is tried to completion before a three judge panel, whereupon it is discovered that there is no written waiver as provided for in Crim. R. 23(A), and the defendant and counsel promptly execute a written waiver, such action satisfies the procedural requirements of the rule." *Harris* at paragraph two of the syllabus. The court found that the record reflected that Harris wanted to waive a jury trial. *Id.* at 360. A journal entry dated before the trial noted the jury waiver and appointed a three judge panel. *Id.* The opening statement of defense counsel acknowledged Harris's desire to waive a jury. *Id.* at 359-360. When it was

discovered after the guilty finding that Harris had not signed the waiver, Harris then executed the waiver in open court. *Id*. at 361. The court concluded that "to reverse this conviction on such a narrow, hypertechnical point would not be justified by reason or logic." *Id*.

{¶17} Here, the record reflects that an entry was journalized memorializing that Brooks requested a continuance of the jury trial for the purpose of scheduling a bench trial. Thus, the record reflects that prior to trial, Brooks orally waived his right to a jury trial. Prior to the start of the bench trial, defense counsel acknowledged that he was prepared to proceed with the bench trial.

{¶18} The following morning, when the trial court discovered that the waiver was not in the record, the judge presented Brooks with his signed jury-waiver form. Then, the court engaged in a colloquy with him to ensure that he understood his right to a jury trial and voluntarily waived that right. In open court, Brooks reaffirmed that he wished to waive his right to a jury trial, and that he signed the waiver of his own free will. The signed jury waiver was journalized and made a part of the record.

{¶19} Prior to trial, Brooks orally waived his right to a jury trial. He subsequently signed a written waiver in open court. Thus the record reflects that Brooks knowingly, voluntarily, and intelligently waived his constitutional right to a jury trial. Accordingly, we overrule the first assignment of error.

### Sufficiency and Manifest Weight

{¶20} In two assignments of error, argued together, Brooks contends that the evidence was insufficient to support his convictions, and his convictions were contrary to the weight of the evidence because the victims incited and escalated the violence, no physical evidence connected him to the crime, he introduced alibi testimony, and the victims' testimony was inconsistent.

{¶21} In reviewing a challenge to the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime had been proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶22} When considering a weight-of-the-evidence claim, we review " 'the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 59, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).

{¶23} "[I]it is well settled law that matters as to the credibility of witnesses are for the trier of fact to resolve." *State v. Ham*, 1st Dist. Hamilton No. C-170043, 2017-Ohio-9189, ¶ 21. " 'When conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony.' " *State v. Robinson*, 12th Dist. Butler No. CA2018-08-163, 2019-Ohio-3144, ¶ 29, quoting *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17.

{¶24} Brooks was convicted of four counts of felonious assault in violation of R.C. 2903.11(A)(2) and one count of improperly discharging a firearm into a habitation in violation of R.C. 2923.161(A)(1). Under R.C. 2903.11(A)(2), a felonious assault occurs when a person knowingly causes or attempts to cause physical harm to another "by means of a deadly weapon or dangerous ordnance." A person violates R.C.

2923.161(A)(1) by discharging a firearm at or into an occupied structure without privilege to do so.

{¶25} In the present case, a rational factfinder could have found that the witnesses' testimony established that Brooks fired a gun at the door where three people were standing and fired at a window where one individual was standing. The state submitted photos showing the bullet holes in the door and hallway. Brooks's intent to cause serious physical harm is inferred from his shooting the gun in the victims' direction. *See State v. Phillips*, 75 Ohio App.3d 785, 792, 600 N.E.2d 825 (2d Dist.1991); *State v. Grant*, 8th Dist. Cuyahoga No. 90465, 2008-Ohio-3970, ¶ 18, quoting *State v. Gregory*, 90 Ohio App.3d 124, 131, 628 N.E.2d 86 (12th Dist.1993) (" 'The shooting of a gun in a place where there is a risk of injury to one or more persons supports the inference that appellant acted knowingly.' "). With respect to the lack of physical evidence, the state is not required to present physical evidence or recover a weapon to satisfy its burden. *See State v. English*, 1st Dist. Hamilton No. C-180697, 2020-Ohio-4682, ¶ 29.

{¶26} Construing the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found, beyond a reasonable doubt, that Brooks attempted to cause serious physical harm by firing his gun in the direction of the victims and into an occupied habitation. Accordingly, the convictions were supported by sufficient evidence.

{¶27} Furthermore, this is not the exceptional case where the factfinder clearly lost its way and created a manifest miscarriage of justice. The trial court heard all of the testimony and found the victims' testimony to be more credible then the alibi testimony of Brooks's father. The record supports this finding, and the trial court did

9

not lose its way or create a manifest miscarriage justice.

**{¶28}** We overrule the second and third assignments of error.

## Conclusion

**{¶29}** Having overruled Brooks's three assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**BERGERON** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its own entry this date.