[Cite as *State v. Dale*, 2024-Ohio-2001.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230474 |
| | | TRIAL NO. 22TRC-9885 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| BOBBY DALE, JR., | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 24, 2024

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Joseph Cossins*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Krista Gieske,* Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Judge.**

**{¶1}** Bobby Dale, Jr. was convicted, after a jury trial, of operating a motor vehicle while impaired ("OVI"). In one assignment of error, Dale argues his conviction was not supported by sufficient evidence and was contrary to the manifest weight of the evidence. For the following reasons, we affirm the judgment of the trial court.

## Factual Background

**{¶2}** Dale was charged with driving while impaired after refusing a breath test and entered a not-guilty plea. He filed two motions to suppress seeking to suppress his statements and the field-sobriety tests. The court overruled the motions, and the case proceeded to a jury trial.

**{¶3}** The state's first witness was Cincinnati Police Officer Austin Lee, who was assigned to District 1. Lee was patrolling in a marked police cruiser on May 1, 2022, when he saw a car turn onto W. Court Street and pull over in front of the park at 11:43 p.m. Lee did not notice any traffic infractions. Dale exited from the vehicle, leaving the driver's door open, walked into the closed park, and urinated by a tree. Lee approached Dale and asked him what he was doing in the park. Dale admitted that he was urinating in the park. Lee's body-camera video was played while he testified.

**{¶4}** While speaking to Dale, Lee heard slurred speech and noticed that Dale was stumbling and having difficulty standing. Dale also provided a confusing explanation as to where he was going and from where he was coming. Lee smelled an odor of alcohol on his breath that got stronger as Dale spoke, and Dale admitted to consuming one-and-a-half beers.

**{¶5}** Based on these observations, Lee suspected Dale was impaired and decided to conduct standardized field-sobriety testing ("SFST"). Lee retrieved an OVI

booklet from his car to conduct the tests and allow him to read the test instructions verbatim. The tests and instructions were provided by the National Highway Traffic Safety Administration ("NHTSA"). Lee informed Dale that if he performed the tests well, he would be free to leave.

{¶6} That evening, Lee was training a probationary police officer, Officer Dawson. Dawson, who appeared on the video, was on maternity leave and did not testify at trial. The first test administered was the walk-and-turn test. Dawson and Lee had to repeat the instructions and demonstration multiple times. Lee interpreted Dale's inability to comprehend the instructions as an indication of his level of impairment or combativeness because he did not want to perform the test. Lee testified that Dale exhibited multiple impairment clues while performing the test. Dale did not touch heel-to-toe, lost his balance or stepped off the line, used his arms to balance, raised his arms more than six inches, took an incorrect number of steps, and did not turn.

{¶7} Next, Dale was instructed on the one-leg stand. Initially, Dale began to perform the walk-and-turn test instead of the one-leg stand after confirming twice that he understood the instructions. When Dale finally performed the one-leg stand, he exhibited no clues.

{¶8} The final test was the horizontal gaze nystagmus ("HGN"), the most accurate SFST. Lee explained that HGN is an involuntary jerking of the eye when tracking a stimulus that increases as a person becomes more intoxicated. Dawson performed the first two parts of the test while Lee stood behind her and watched. Lee observed nystagmus in both eyes at maximum deviation.

{¶9} Lee conducted the third part of the test to demonstrate to Dawson how

3

to properly conduct the test and ensure Dale was given a fair test. Lee observed the onset of nystagmus prior to 45 degrees in the right eye but not the left eye. After the tests were completed, Lee concluded that Dale was too intoxicated to be driving based on his behavior, demeanor, comprehension, and the clues on the SFSTs. Lee arrested Dale for OVI and transported him to the District 1 police station

{¶10} A video from the station was played for the jury. Dale asked the officers four times why he was pulled over despite the fact that he was not pulled over. When Lee explained the administrative license suspension to Dale, Dale responded, "If I blow or if I don't, I'm fucked." Dale referenced that he was "fucked" two additional times and was angry and combative. Ultimately, he refused to take a breath test.

{¶11} After Lee's testimony, both parties rested, and the case was submitted to the jury. The jury found Dale guilty of OVI. This appeal followed.

## Sufficiency and Manifest Weight

{¶12} In his sole assignment of error, Dale contends that his conviction was not supported by sufficient evidence and was contrary to the manifest weight of the evidence.

{¶13} In reviewing a challenge to the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime had been proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. As to the weight of the evidence, we review whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). We afford

substantial deference to credibility determinations because the factfinder sees and hears the witnesses. *See State v. Glover*, 1st Dist. Hamilton No. C-180572, 2019-Ohio-5211, ¶ 30.

**{¶14}** Dale argues that the evidence did not sufficiently or credibly establish that he was impaired to the degree required for the offense of OVI. Dale contends that the state's evidence failed to establish that his driving was impaired because Lee did not witness any traffic infractions or impaired driving.

**{¶15}** Notably, the statute does not require a driver to exhibit impaired driving, "rather, the driver's ability to drive must be impaired." *State v. Crutchfield*, 9th Dist. Lorain Nos. 10CA009931, 10CA009932 and 10CA009933, 2011-Ohio-6681, ¶ 11, citing *State v. Zentner*, 9th Dist. Wayne No. 02CA0040, 2003-Ohio-2352, ¶ 19 (concluding that the state "need only show an impaired driving ability[]" under R.C. 4511.19(A)(1), which prohibits operation of a vehicle under the influence of alcohol).

**{¶16}** Dale was convicted of violating R.C. 4511.19(A)(1)(a), which states in relevant part: "No person shall operate any vehicle, * * * if, at the time of the operation, * * * [t]he person is under the influence of alcohol." To sustain a conviction for OVI, the state must prove that the defendant ingested alcohol and the alcohol impaired the defendant's subsequent driving. *See State v. Bowden*, 1st Dist. Hamilton No. C-190396, 2020-Ohio-4556, ¶ 11, quoting *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 14. "Under the influence" has been defined as:

> the condition in which a person finds himself after having consumed some intoxicating beverage, whether mild or potent, and in such quantity, whether small or great, that its effect on the person adversely affects his actions, reactions, conduct, movements or mental processes

5

or impairs his reactions to an appreciable degree, under the circumstances then existing so as to deprive him of that clearness of the intellect and control of himself which he would otherwise possess.

*State v. Maynard*, 1st Dist. Hamilton No. C-230160, 2023-Ohio-4619, ¶ 38, quoting *State v. Eldridge*, 12th Dist. Warren No. CA2015-02-013, 2015-Ohio-3524, ¶ 7.

**{¶17}** Lee's testimony established that Dale admitted to consuming alcohol, had a strong odor of alcohol on his breath, performed poorly on the field-sobriety tests, was stumbling and having difficulty standing and was confused, forgetful, and combative. Lee further testified that he believed Dale was intoxicated based upon the physical indicia of alcohol intoxication he observed. Witness testimony that the accused was intoxicated based on observations that he was "staggering and swaying, he had a moderate to strong odor of alcohol, and his speech was slurred" has been found sufficient to prove intoxication. *See State v. Dickens*, 2d Dist. Montgomery No. 17336, 1999 Ohio App. LEXIS 1649, 5 (April 9, 1999). Viewing the evidence in the light most favorable to the state, the state presented sufficient evidence to prove that Dale operated his vehicle while impaired.

**{¶18}** Dale further argues that the SFST results should be discounted because Lee did not properly conduct the SFSTs. However, the trial court determined that Lee substantially complied with NHTSA instructions when administering the SFSTs, and Dale did not appeal the ruling. Although Dale argued that the results of the HGN test administered by Dawson were unreliable because Lee was "not in the proper position to observe nystagmus," Lee testified that he observed the results of the HGN tests administered by Dawson. Ultimately, it was for the jury to decide credibility, and the jury believed Lee's testimony. This is not "the exceptional case in which the evidence

weighs heavily against the conviction." *See Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Therefore, the conviction was not against the manifest weight of the evidence.

{¶19} We overrule the assignment of error.

## Conclusion

{¶20} Having overruled Dale's sole assignment of error, we affirm the judgment of the trial court.

Judgment affirmed.

**BOCK, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its own entry this date.