[Cite as *State v. Ward*, 2024-Ohio-5073.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-230498 |
| | | C-240157 |
| Plaintiff-Appellee, | : | TRIAL NOS.  21/CRB/1078 |
| vs. | : | 22/TRD/14020/A/B |
| LANGSTON WARD, | : | |
| Defendant-Appellant. | : | *O P I N I O N.* |


Criminal Appeals From:  Hamilton County Municipal Court

Judgments Appealed From Are:  Affirmed

Date of Judgment Entry on Appeal: October 23, 2024


*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Julie Myers*, Assistant Prosecuting Attorney, for Plaintiff-Appellee City of Cincinnati,

*Raymond T. Faller*, Hamilton County Public Defender, and *Sarah E. Nelson,* Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

**{¶1}** Langston Ward appeals his convictions, after a bench trial, for failure to comply, reckless operation, and driving under suspension. In two assignments of error, Ward contends that his convictions are not supported by sufficient evidence and are contrary to the manifest weight of the evidence because the State failed to prove Ward was the driver and that his counsel was ineffective for failing to file a notice of alibi. For the reasons that follow, we affirm the judgments of the trial court.

## Factual Background

**{¶2}** Ward was charged with failure to comply, reckless operation, and driving under suspension. After entering not-guilty pleas, he proceeded to a bench trial. At the trial, Cincinnati Police Sergeant Grant Hunter testified that he was assigned to the violent crime unit. Hunter had been investigating a drug complaint at an apartment at 1900 Colerain Avenue by using a covert camera to observe the building. The camera was approximately half a block from the building. Hunter had determined that the two individuals who lived in the first-floor apartment were involved in drug trafficking.

**{¶3}** As part of his investigation, Hunter had researched the property and had determined that the second-floor apartment was vacant, and Langston Ward lived in the top-floor apartment. Hunter had obtained photos of Ward from criminal databases, including RCIC and LEADS. Through the covert surveillance, Hunter developed a belief that there was a link between Ward and the occupants of the first-floor apartment.

**{¶4}** That day, while Hunter was preparing a search warrant for the building, he was watching the live camera feed with other officers. Portions of the surveillance

2

video were played in court. The officers were monitoring the building to ensure no one entered or exited because they were preparing to execute the search warrant. Hunter observed Ward exit from a car, approach the entrance, and use a key to enter the building. The car was a rental car with a Michigan license plate. Ward had parked the car in front of a fire hydrant. Hunter identified Ward in court.

{¶5} Hunter had previously discovered that Ward had an active arrest warrant for assault, so he radioed for a uniformed officer to stop Ward's car when he left the building, and Officer Sarchet responded in a marked cruiser. When Ward exited the building, Sarchet arrived to perform the traffic stop and activated his overhead lights. Instead of stopping, Ward fled in the car. Hunter testified that Ward impeded the investigation because Sarchet was forced to follow Ward instead of assisting to secure the building for the search. Hunter reviewed a certified copy of Ward's Bureau of Motor Vehicles record showing that Ward had an indefinite license suspension recorded on January 7, 2020. The document included an accurate description of Ward.

{¶6} Officer Caleb Sarchet, an officer assigned to the violent crime squad, testified that he was assigned to assist with the search warrant. Prior to his encounter with Ward, Sarchet had detained two people who were trying to leave the residence. When that stop was concluded, Sarchet went back to the building. His role was to prevent others from leaving the building while the SWAT team prepared to execute the warrant. When he returned, Sarchet observed Ward leaving the building and got a good look at him. Sarchet provided an in-court identification of Ward.

{¶7} As he arrived at the apartment, Sarchet received a call from Hunter, and he asked Hunter if he should detain Ward. Hunter responded that Ward had a warrant

for his arrest, and Sarchet should conduct a traffic stop. Hunter observed Ward enter the vehicle, and as he pulled up, he could see the car was illegally parked. The front bumper of the vehicle was next to a fire hydrant, and the front of the car was parked in a no-parking zone.

{¶8} When Sarchet activated his lights and chirped his siren, Ward accelerated at a high rate of speed and drove down the street, running a stop sign on Winchell, a very busy street. While following Ward, Sarchet realized how fast he was driving, so he attempted to contact his boss to approve the pursuit. As he approached a light at Bank Street, Sarchet was traveling at a speed of 80 miles per hour. Sarchet braked while Ward accelerated through the traffic light and merged onto Intersate-75 ("I-75"). Sarchet terminated the chase after observing Ward weaving in and out of traffic on I-75 and driving at dangerous speeds. Sarchet believed that someone would be seriously injured if he continued the pursuit.

{¶9} Sarchet had never seen Ward prior to observing him exiting the apartment building. Sarchet testified that to the best of his knowledge, no officer stopped Ward's vehicle that day.

{¶10} Ward testified that he lived in the third floor apartment, and that he was working at Jurgenson Construction that day. The State objected to his testimony because Ward did not file a notice of alibi. The trial court sustained the objection. Ward testified that he was not the person depicted in the video, and he did not recognize the person in the video. According to Ward, several black males with dreadlocks lived in the second-floor apartment.

{¶11} After reviewing the video, Ward explained that the man depicted in the video had a full head of hair, and he has a receding hairline. He further explained that

he usually wore a kufi to conceal his receding hairline. After Ward's testimony, the defense rested.

{¶12} The trial court reviewed the video and stated, "From that video, I can't tell if it's a full head of hair or not. However, the officer, two officers, identified the defendant. Findings are guilty."

{¶13} Ward now appeals, and in two assignments of error, he contends that his convictions are not supported by sufficient evidence and are contrary to the manifest weight of the evidence and that his counsel was ineffective.

## Sufficiency and Manifest Weight

{¶14} In his first assignment of error, Ward argues that his convictions were not supported by sufficient evidence and were contrary to the manifest weight of the evidence.

{¶15} In reviewing a challenge to the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime had been proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶16} As to the weight of the evidence, "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Glover*, 2019-Ohio-5211, ¶ 29 (1st Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). We afford substantial deference to credibility

determinations because the factfinder sees and hears the witnesses. *See State v. Dale*, 2024-Ohio-2001, ¶ 13 (1st Dist.).

{¶17} Ward contends that the State failed to sufficiently or credibly prove that he was the individual driving the car. Ward argues that the identification was flawed because the police did not make personal contact with the driver, the camera was located a half-block from the building, and Hunter merely speculated that the person who entered the building was Ward.

{¶18} Hunter testified that he identified Ward based on the surveillance video and photos of Ward from police databases. Hunter observed Ward enter the building with a key, and Ward confirmed he lived in the building. Hunter identified Ward in court as the man he saw that day. Sarchet testified that he observed Ward exit the building and got a good look at him. Based on viewing Ward, Sarchet provided an in-court identification. Sarchet confirmed that Ward matched the description given to him by Hunter. Viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that Ward was the driver of the vehicle.

{¶19} Ward further argues that the officer's identification of Ward as the driver was not credible. However, the trial court found the officer's testimony to be credible. "[I]t is well settled law that matters as to the credibility of witnesses are for the trier of fact to resolve." *State v. Brooks*, 2023-Ohio-846, ¶ 23 (1st Dist.), quoting *State v. Ham*, 2017-Ohio-9189, ¶ 21 (1st Dist.).

{¶20} Based on our review of the record, we cannot say that this is "the exceptional case in which the evidence weighs heavily against the conviction." *See Thompkins*, 78 Ohio St.3d at 387. Therefore, Ward's conviction was not against the manifest weight of the evidence.

**{¶21}** We overrule the first assignment of error.

## Ineffective Assistance of Counsel

**{¶22}** In his second assignment of error, Ward asserts that he was denied the effective assistance of counsel because counsel failed to file a notice of alibi.

**{¶23}** To establish a claim of ineffective assistance of counsel, appellant must show his trial counsel's actions fell below an objective standard of reasonableness, and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687-691 (1984). To demonstrate prejudice, appellant must establish, but for counsel's errors, a reasonable probability exists that the result of the trial would have been different. *Id.* at 694.

**{¶24}** In considering claims of ineffective assistance of counsel, courts presume that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Conway*, 2006-Ohio-2815, ¶ 101. "Debatable trial tactics generally do not constitute a deprivation of effective counsel." *State v. Phillips*, 74 Ohio St.3d 72, 85 (1995), citing *State v. Clayton*, 62 Ohio St.2d 45, 49 (1980).

**{¶25}** Crim. R. 12.1 provides that when a defendant intends to offer testimony establishing an alibi, the defendant must provide a written notice of the intent to establish an alibi which includes "specific information as to the place at which the defendant claims to have been at the time of the alleged offense."

**{¶26}** In this case, Ward's counsel did not provide a notice of alibi. However, there is nothing in the record to establish that Ward's counsel knew of Ward's alleged alibi defense. *See In re T.T.* 2016-Ohio-5075, ¶ 12 (6th Dist.); *State v. Plymale*, 2016-Ohio-3340, ¶ 39 (4th Dist.); *State v. Alexander*, 1993 Ohio App. LEXIS 3861, *10 (6th Dist. Aug. 6, 1993) (rejecting an ineffective assistance of counsel claim where there

was nothing in the record to show that trial counsel knew of the alibi seven days prior to trial). "Without this evidence we would have to speculate about whether trial counsel's failure to file a notice of alibi was based on his lack of knowledge of it, the product of an informed and calculated trial-strategy decision, or negligence." *Plymale* at ¶ 39. Ward can only speculate that an alibi defense would have assisted him at trial. *See id.*

**{¶27}** Accordingly, we overrule the second assignment of error.

## Conclusion

**{¶28}** Having overruled Ward's two assignments of error, we affirm the trial court's judgments.

Judgments affirmed.

**BERGERON** and **KINSLEY, JJ.,** concur.

Please note:
> The court has recorded its own entry this date.