[Cite as *State v. Yeban*, 2024-Ohio-2545.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230297 |
| | | TRIAL NO. C-22TRC-24367A-B |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| MAURICE YEBAN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, Appeal Dismissed In Part, and Cause Remanded

Date of Judgment Entry on Appeal: July 3, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Keith Sauter*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Roger W. Kirk*, for Defendant-Appellant.

**KINSLEY, Judge.**

{¶1} Defendant-appellant Maurice Yeban appeals his conviction for operating a motor vehicle with a breath-alcohol concentration of over 0.17 percent in violation of R.C. 4511.19(A)(1)(h). In five assignments of error, Yeban argues that the trial court abused its discretion by imposing a maximum sentence, the prosecutor committed misconduct during closing argument, the trial court erred in admitting a 911 call that contained inadmissible hearsay, the trial court erred by admitting a body-camera video containing inadmissible hearsay in violation of the Confrontation Clause, and his conviction was not supported by sufficient evidence and was contrary to the manifest weight of the evidence.

{¶2} After carefully considering Yeban's arguments, we hold the finding of guilt was supported by sufficient evidence and not against the manifest weight of the evidence and find no prejudicial error on the record before us. But we reverse his sentence, because it was based upon improper considerations falling outside the statutory factors for misdemeanor sentencing. We therefore remand the matter to the trial court for resentencing.

{¶3} Yeban also appeals his conviction in the case numbered C-22TRC-24367A ("the A count") for operating a motor vehicle while under the influence of alcohol, a drug of abuse, or a combination of them in violation of R.C. 4511.19(A)(1)(a). However, because the A count merged with Yeban's conviction under R.C. 4511.19(A)(1)(h), we need not consider any issues uniquely related to this count, as they would be harmless. *See State v. Mugrage*, 11th Dist. Portage No. 2020-P-0066, 2021-Ohio-4136, ¶ 133. We accordingly dismiss Yeban's appeal insofar as it relates to the A count.

## *Factual and Procedural Background*

{¶4} Following a traffic incident on October 16, 2022, Yeban was charged with operating a motor vehicle while under the influence of alcohol, a drug of abuse, or a combination of them ("OVI") in violation of R.C. 4511.19(A)(1)(a), OVI with a breath-alcohol concentration of over 0.17 percent in violation of R.C. 4511.19(A)(1)(h), and two additional misdemeanors, including a traffic violation.

{¶5} His first jury trial took place in March 2023. On March 23, 2023, the trial court declared a mistrial on the two OVI charges, after the jury was unable to reach a verdict. Yeban was acquitted of one of the additional charges by the trial court, but convicted of the traffic violation, for which he received a fine.

{¶6} His second jury trial on the OVI charges began on May 15, 2023. The state's first witness at that trial was Leann Konkoly, a 911 call center operator. Konkoly testified that she received a phone call at 1:22 a.m. on October 16, 2022, about a vehicle in Sharonville that had driven off the road. Konkoly authenticated a recording of the 911 call. Yeban objected to the admission of the recording as improper hearsay. The trial court overruled the objection, and the recorded 911 call was admitted into evidence and played in court.

{¶7} In the recording, a caller reports that a black Dodge was parked on the grass next to a BP gas station in Sharonville. The caller states that driver in the vehicle was not awake. The caller indicates that he had honked at the car, but the driver was not moving. The caller reported that it appeared that the Dodge went off the road and onto the grass. According to the caller, the vehicle was running, and the driver was breathing. The caller later reported that the driver had awakened.

{¶8} Konkoly testified that she typed the information she received from the caller into her computer and sent it to the police radios. She indicated that she sent it as an unconscious person to ensure that both the police and paramedics were en route.

{¶9} Next, Lieutenant Amy Nutley, a firefighter and paramedic at the Sharonville Fire Department, testified that she was dispatched to the scene. Nutley reviewed the body-worn camera recording of Sergeant Broenner, a Sharonville police officer who also reported to the scene. Nutley testified that the video was an accurate depiction of the events she observed while attending to Yeban on October 16, 2022.

{¶10} When the state sought to admit and publish the video, Yeban objected on hearsay grounds and pointed out that Broenner was unavailable to testify. During an in-chambers discussion, the prosecutor argued that the video was admissible under the "pictorial testimony" theory because Nutley personally observed the interaction between Broenner and Yeban. The prosecutor further contended that Yeban's statements were admissible as admissions by a party opponent. The court overruled Yeban's objection, and the state admitted and played a three minute and 29 second excerpt of the video.

{¶11} The video began with Broenner's arrival on the scene. Yeban's vehicle was stopped over a curb that separated the street from the grass. The car was parked in the grass with the back end of the car in the street. Yeban was standing next to the vehicle with the keys in his hand. Broenner approached and spoke with Yeban. During their exchange, Yeban initially denied drinking at all, but then admitted to drinking a little. He claimed to be coming from a movie theater but could not remember which one. He said he lived in Forest Park but could not recall his current address. Yeban produced a driver's license to Broenner that listed an old address. Broenner also made statements describing his impressions of Yeban's condition and conduct.

4

{¶12} After the video ended, Nutley continued her testimony. Nutley indicated that when she arrived, Yeban was in the driver's seat. She ensured he was in stable condition and asked him to exit from the car and to make sure the car was in park. Nutley smelled an odor of alcohol on Yeban while he was sitting in the car.

{¶13} The state's next witness was Officer Alex Madyda, a patrol officer for the city of Sharonville. Madyda responded to the intersection of Lebanon and Hauk Roads due to a car that was off the roadway. He smelled a moderate odor of alcohol on Yeban. Madyda had been trained in OVI investigative techniques, including properly administering standardized field sobriety testing ("SFST"). Madyda testified that he performed three SFSTs on Yeban. First he conducted the Horizontal Gaza Nystagmus exam which is designed to detect involuntary eye movements when tracking a stimulus. According to his testimony, Madyda observed six out of six clues, a failing score. Yeban was unable to successfully complete the walk-and-turn test or the one-leg stand. Madyda was wearing a body-worn camera, and his cruiser was equipped with dash camera. Both videos were admitted into evidence.

{¶14} Madyda further testified that he administered a breath test to Yeban at the police station. Yeban's breath alcohol concentration was .202. Madyda opined that Yeban was appreciably impaired that evening based on his observations. Madyda further testified that the vehicle was registered to Yeban, but he did not observe Yeban driving the vehicle. Yeban had told him that he was out with a woman who he dropped off, but Madyda did not know if the woman had been driving the car. He also told Madyda that he did not remember how his car was driven into the grass.

{¶15} Yeban also testified on his own behalf. Yeban testified that he was out with a woman that night who was not his girlfriend. The two had gone to dinner and then to a bar to watch a fight. The woman, who was driving his car, drove it into the

grass. At that point, the two had an argument, and she left. He remained by the car. Yeban did not tell the police because he did not want his girlfriend to find out he was with another woman. During cross-examination, Yeban admitted that he was not honest when he told Madyda that he did not remember how his car was driven into the grass. Initially, Yeban refused to disclose the name of the woman, but then testified that her name was Julia. He had communicated with her via Facebook messenger but did not bring the communications with him to court.

{¶16} During a recess, Yeban read a statement into the record expressing his beliefs as a sovereign citizen. He contended that he had committed no crime because he had not harmed any person or property. He explained that he appeared in court in order to clear his name, but professed his refusal to "yield authority to this fictitious entity that was created on [his] behalf." He concluded by requesting the court "to produce the injured person who ha[d] filed a verified complaint."

{¶17} The jury found Yeban guilty of both charges, which merged for purposes of sentencing. The state elected to proceed on the conviction for OVI while under the influence of alcohol with a breath-alcohol concentration of over 0.17 percent under R.C. 4511.19(A)(1)(h).

{¶18} Prior to sentencing, Yeban addressed the court, arguing that he could bring a lawsuit under the Uniform Commercial Code and common law against the court for violating his rights. He further expressed his belief that "[o]nly people are sovereign and have rights. Bureaucrats/government officials are not sovereign, and they have no rights. They have no authority, which is given to the people, and are subject to the statutes/codes."

{¶19} In mitigation, Yeban's counsel stated that Yeban had no prior convictions, was gainfully employed as a software engineer, did not violate any of the

6

conditions of his pretrial bond, and had committed no new offenses since being charged. The state sought a nonminimum sentence.

**{¶20}** The court imposed a 180-day jail sentence after making the following findings:

> This was a dangerous situation to yourself, as well as to innocent people who were on the road at the time or property in that area.
>
> You lost control. You were unconscious behind the wheel. The car went off the road. It is but good fortune that no one was injured or harmed as a result of your conduct.
>
> The level of impairment * * * is very high. You were extremely impaired by your consumption of alcohol on that particular occasion.
>
> * * *
>
> The defendant admitted lying to the police from the witness stand. The jury ultimately concluded clearly that you lied to the jury, concocting a completely convenient, self-serving, and entirely unsupported claim from the witness stand for the first time.
>
> The defendant has made clear he does not recognize the legitimacy of the court or the authority of the court. He absolutely accepts no responsibility for his conduct, no recognition whatsoever that he did anything wrong, no remorse. There's no recognition that he's even bound by any of the law that applies to anyone in the state of Ohio.
>
> As such, the Court cannot put him on probation as he does not recognize any authority of the court, and therefore, will not abide by the terms of the community control.

**{¶21}** Yeban now appeals.

### *Prosecutorial Misconduct*

**{¶22}** Yeban raises five assignments of error on appeal. The first assignment of error relates to sentencing, and the remaining four assignments of error address the trial. We consider the trial-based assignments of error first out of turn.

**{¶23}** In his second assignment of error, Yeban argues that the prosecutor violated his due process right to a fair trial by making prejudicial statements in closing argument. Yeban identifies five separate categories of comments by the prosecutor that he believes undermined his right to fundamental fairness: (1) improper witness vouching, (2) denigrating defense counsel, (3) improper burden shifting, (4) denigrating the defendant, and (5) misstating the evidence.

**{¶24}** Prior to closing arguments, the trial court informed the jury that "[c]losing arguments, like opening statements, are not evidence." Yeban's trial attorney objected to some of the statements Yeban now claims were prejudicial, but not all of them. We review the statements to which no objection was made for plain error. *See State v. Walker*, 8th Dist. Cuyahoga No. 110741, 2022-Ohio-1238, ¶ 38.

**{¶25}** "The test for prosecutorial misconduct is whether the remarks were improper, and if so, whether they prejudicially affected the accused's substantial rights. The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.' " *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 154. "Prosecutorial misconduct will not provide a basis for overturning a conviction unless, on the record as a whole, the misconduct can be said to have deprived the defendant of a fair trial." *State v. Sanon*, 1st Dist. Hamilton No. C-220125, 2023-Ohio-2742, ¶ 46.

{¶26} In general, prosecutors enjoy a wide degree of latitude during closing arguments. *See State v. Richey*, 64 Ohio St.3d 353, 362, 595 N.E.2d 915 (1992). They may freely address what the evidence has shown and what reasonable inferences may be drawn from that evidence. *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990).

### 1. Improper witness vouching

{¶27} As part of closing arguments, the prosecutor stated: "[Madyda] is just a picture of civility and professionalism that all law enforcement should aspire to. I just wanted to take a moment to commend him. I think that really comes out in the evidence and all the recordings that I presented to you throughout this case." Yeban argues that this comment amounted to improper witness vouching, although he did not object to the comment at trial. We therefore consider whether the prosecutor's statements constituted plain error. *Walker*, 8th Dist. Cuyahoga No. 110741, 2022-Ohio-1238, at ¶ 38. They did not.

{¶28} An attorney may not express a personal belief or opinion as to the credibility of a witness. *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶ 117, citing *State v. Williams*, 79 Ohio St.3d 1, 12, 679 N.E.2d 646 (1997). "In order to vouch for the witness, the prosecutor must imply knowledge of facts outside the record or place the prosecutor's personal credibility in issue." *Id.*, citing *State v. Keene*, 81 Ohio St.3d 646, 666, 693 N.E.2d 246 (1998). "A prosecutor may comment upon the circumstances of witnesses in their testimony, including their interest in the case, their demeanor, their peculiar opportunity to review the facts, their general intelligence, and their level of awareness as to what is going on." *State v. Clay*, 181 Ohio App.3d 563, 2009-Ohio-1235, 910 N.E.2d 14, ¶ 47 (8th Dist.).

{¶29} Applying these standards, the prosecutor did not comment on Madyda's credibility by referencing facts outside the record or putting his own personal credibility at issue. Rather, he commented on Madyda's demeanor as reflected in the videos and testimony and invited the jury to consider Madyda's professionalism in weighing the impact of his testimony. This was fair commentary on a witness's testimony and did not amount to prosecutorial misconduct, much less plain error.

### 2. Denigrating defense counsel

{¶30} Next, Yeban contends the prosecutor improperly denigrated defense counsel by mentioning that defense counsel did not want to read from the jury instructions and arguing that the defense's closing argument did not point to facts. Yeban did not object to these remarks at trial, and we find no plain error in them. Rather, both statements were appropriate responses to defense counsel's closing remarks. *See Lott*, 51 Ohio St.3d at 165, 555 N.E.2d 293. In the defense closing argument, defense counsel told the jurors that he would not read from the jury instructions, but that the trial court would. It was not misconduct for the prosecutor to comment on this statement. *Id.* Moreover, the defense's theory of the case was that the state could not prove Yeban operated the vehicle, and counsel focused on that fact in his closing remarks. The prosecution was free to rebut that argument by emphasizing that it rested on speculation rather than facts. *Id.*

### 3. Improper burden shifting

{¶31} Yeban further argues that the prosecutor improperly shifted the burden of proof to the defense in two ways. First, the prosecutor pointed out that Yeban did not produce the Facebook messages between him and Julia at trial. Second, the

prosecutor suggested that the only defense Yeban mounted was his own questionable testimony. Yeban objected to these statements, and in response the trial court reminded the jury that closing arguments are not evidence.

**{¶32}** "Prosecutors are entitled to latitude as to what the evidence has shown and what inferences can be drawn from the evidence." *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 213. Moreover, "[a] prosecutor is permitted to highlight the lack of evidence supporting a defendant's theory of case." *State v. Brown*, 10th Dist. Franklin No. 13AP-164, 2013-Ohio-5391, ¶ 23.

**{¶33}** While on the stand, Yeban testified that he did not bring the messages to court. He also admitted to being dishonest when he told Madyda that he did not remember how his car was driven into the grass. The prosecutor's statements summarized the evidence in this regard and were therefore not improper. *Id.*

### 4. Denigrating the defendant

**{¶34}** Yeban next takes issue with the prosecutor's descriptions of Yeban during closing argument. In that regard, the prosecutor called Yeban a drunk and said he "g[ot] up here and lie[d] on the stand." Yeban objected to the remark about his credibility at trial, but the trial court overruled the objection.

**{¶35}** "It is improper for a prosecutor to state that the defendant is a liar or that he believes the defendant is lying." *State v. Baldev*, 12th Dist. Butler No. CA200-05-106, 2005-Ohio-2369, ¶ 20, citing *State v. Rahman*, 23 Ohio St.3d 146, 154, 492 N.E.2d 401 (1986) (comments improper, but not plain error, where appellant was labeled a "hypocrite" and "the biggest liar that's taken the stand in a long time"). The trial court therefore erred in overruling Yeban's objection.

**{¶36}** We do not believe, however, that "the [prosecutor's] misconduct * * * deprived the defendant of a fair trial." *See Sanon*, 1st Dist. Hamilton No. C-220125,

11

2023-Ohio-2742, at ¶ 46. Yeban himself had admitted to being untruthful with Madyda at the scene, and the state only used the word "lies" once in reference to Yeban. Particularly given the trial court's admonishment that closing arguments are not evidence, that one fleeting comment did not so infect the minds of the jury that it undermined Yeban's right to due process.

### 5. *Misstating the evidence*

{¶37} Yeban additionally argues that the prosecutor misstated the evidence in closing argument. At one point, the prosecutor told the jury, "It's extremely clear what happened here. Mr. Yeban got to the light, he was drunk. It's about 1:00 a.m. He passed out, slipped his foot off the brake, and rolled--." Yeban objected, but the objection was overruled.

{¶38} While there was no direct evidence as to this version of events, prosecutors are free to argue reasonable inferences that are supported by the evidence. *See Lott*, 51 Ohio St.3d at 165, 555 N.E.2d 293. And this narrative reasonably interpreted the evidence presented at trial. The state presented a BAC result confirming Yeban's level of intoxication, as well as the statement of the 911 caller that he was behind the wheel of a running car on the side of the road. Considering the prosecutor's remarks in the context of the entire record, the remarks did not rise to the level of prosecutorial misconduct.

{¶39} Finally, Yeban asserts that he was prejudiced by the prosecutor's remark to the jury to, "Do the right thing. Return a verdict of guilty on both counts." "It is not improper for a prosecutor to call on the jury to do its duty by convicting the defendant. It [is] the jury's duty to convict if the evidence proves guilt beyond a reasonable doubt." (Internal quotations omitted.) *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 158.

{¶40} In sum, the prosecutor committed no prejudicial misconduct in closing argument. We therefore overrule Yeban's second assignment of error.

### *Admission of 911 Recording*

{¶41} In his third assignment of error, Yeban argues that the trial court erred by admitting into evidence the out-of-court statement of the 911 caller on the grounds that the statement was inadmissible hearsay. Because Yeban objected to the admission of the statement, we review its admission for an abuse of discretion. *See State v. Scott*, 1st Dist. Hamilton Nos. C-200385 and C-200403, 2021-Ohio-3427, ¶ 14.

{¶42} "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). In general, hearsay is not admissible. Evid.R. 802. However, there are several exceptions to the hearsay rule, including a "present sense impression." Evid.R. 803(1). A "present sense impression," is defined as "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." *Id.*

{¶43} Ohio courts have routinely held that 911 calls are admissible under the present sense impression exception to the hearsay rule. *See Scott* at ¶ 17; *State v. Smith*, 2017-Ohio-8558, 99 N.E.3d 1230, ¶ 37 (1st Dist.). " 'The principle underlying this hearsay exception is the assumption that statements or perceptions, describing the event and uttered in close temporal proximity to the event, bear a high degree of trustworthiness.' " *State v. Dixon*, 152 Ohio App.3d 760, 2003-Ohio-2550, 790 N.E.2d 349, ¶ 12 (3d Dist.), quoting *Cox v. Oliver Machinery Co.*, 41 Ohio App.3d 28, 35, 534 N.E.2d 855 (12th Dist.1987).

13

{¶44} Here, the 911 caller was actively observing the vehicle at the time he made the call. He requested emergency assistance because the car was off the road, and the driver was not awake. The vehicle was running, and the driver was breathing. While relaying this information, the caller reported that the driver had awakened. This indicated that the events the caller was describing were unfolding as the caller was observing and reporting them.

{¶45} Under these circumstances, the trial court did not abuse its discretion in the admission of the 911 call as a present sense impression. *See Scott*, 1st Dist. Hamilton Nos. C-200385 and C-200403, 2021-Ohio-3427, at ¶ 17. Yeban's third assignment of error is accordingly overruled.

### *Admission of Body-Worn Camera Video*

{¶46} In his fourth assignment of error, Yeban argues that the trial court violated his rights under the Confrontation Clause by admitting testimonial hearsay in the form of Broenner's body-worn camera video without affording Yeban the opportunity to cross-examine Broenner about what was said. Although Yeban does not distinguish between questions asked by Broenner to him and affirmative statements made by Broenner on the video, he appears to argue that none of what Broenner said should have been admitted.

{¶47} "[T]he Confrontation Clause prohibits 'testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.' " *State v. Smith*, 2019-Ohio-3257, 141 N.E.3d 590, ¶ 10 (1st Dist.), quoting *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), paragraph (a) of the syllabus. Statements made in response to police questioning "are testimonial when the circumstances objectively indicate that there is no * * * ongoing emergency, and that

the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). "[E]ven when interrogation exists, it is in the final analysis the declarant's statements, not the interrogator's questions that the Confrontation Clause requires us to evaluate." *Id.* at 822-823, fn. 1. This is the case because questions, unlike answers, do not assert the truth, but instead seek the truth by eliciting an additional response. *See Michigan v. Bryant*, 562 U.S. 344, 369, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011).

**{¶48}** To the extent Yeban challenges the admission of questions Broenner asked him, we cannot say this part of the body-worn camera video violated the Confrontation Clause. *See id.* Yeban cites to no legal authority supporting the idea that questions asked by investigators fall within scope of the Confrontation Clause, and indeed Supreme Court precedent suggests otherwise. *Id.*; *Davis* at 822-823, fn. 1. Moreover, to the extent Yeban challenges the statements he made in answer to Broenner's questions, that portion of the body-worn camera footage presented no Confrontation Clause problem, as Yeban could not conceivably cross-examine himself.[1]

**{¶49}** More concerning, however, are two statements made by Broenner on the body-worn camera video that describe Broenner's impressions of Yeban. First, Broenner made a statement accusing Yeban of driving under the influence and being intoxicated. Second, Broenner made a statement alleging that Yeban was in possession of a firearm while he was under the influence of alcohol.

---

[1] From an evidentiary standpoint, Yeban's statements also constituted admissions of a party opponent, which are not hearsay, and were therefore admissible. *See* Evid.R. 801(D)(2).

**{¶50}** The question of whether these statements were testimonial, and thus required an opportunity for confrontation, or nontestimonial, and thus fell outside the Confrontation Clause, is a complicated one. On the one hand, the comments were not made *to* a law enforcement officer, but *by* a law enforcement officer, and they did not aid in addressing an ongoing emergency. These attributes, in some respects, make the statements seem nontestimonial. *See Davis*, 547 U.S. at 822, 823, 126 S.Ct. 2266, 165 L.Ed.2d 224, fn. 1 (noting that officer questions are typically excluded from Confrontation Clause analysis).

**{¶51}** But, on the other hand, the statements were not made in response to police questioning, one of the hallmarks that distinguishes a testimonial statement. *See State v. Wilcox*, 1st Dist. Hamilton No. C-220472, 2023-Ohio-2940, ¶ 16 (noting that witness statements made voluntarily and not in response to police questioning or formal proceedings were nontestimonial); *but see Davis*, 547 U.S. at 823, fn. 1 (noting that volunteered statements are not necessarily nontestimonial). And Broenner was actively engaged with Yeban when he made the statements, including explaining to him the basis for his pending arrest. Thus, his primary purpose for the statements may have been informational rather than testimonial.

**{¶52}** But even were we to hold that Broenner's statements on the body-worn camera video were testimonial and that their admission violated Yeban's right to confrontation, that error would be harmless. *See Wilcox*, 1st Dist. Hamilton No. C-220472, 2023-Ohio-2940, at ¶ 23. The harmless error test requires us to consider: (1) whether the defendant was prejudiced by the error, i.e. whether the error had an impact on the verdict; (2) whether the error was not harmless beyond a reasonable doubt; and (3) whether the remaining evidence establishes the defendant's guilt

beyond a reasonable doubt once the prejudicial evidence is excised. *See State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, ¶ 37.

**{¶53}** With respect to Broenner's comment that Yeban was driving while under the influence of alcohol, the evidence of Yeban's intoxication was so overwhelming that the body-worn camera video could not have had a prejudicial effect on the jury's verdict. At trial, the state submitted evidence that Yeban's breath-alcohol concentration was .202, as well as Madyda's testimony that Yeban failed the SFSTs. Nutley also testified that Yeban smelled of alcohol when she arrived on the scene. Against this backdrop, any additional statement by Broenner that Yeban was intoxicated was merely cumulative and therefore harmless.

**{¶54}** With respect to Broenner's observation regarding the gun, we too find this to be harmless.[2] The question for the jury to answer at trial was whether Yeban operated a motor vehicle while under the influence of alcohol, not whether he was in possession of a firearm while doing so. Thus, we doubt that one isolated reference to a weapon that was neither brandished nor formed the basis of any criminal charge before the jury would have prejudicially impacted the jury's decision-making process. Moreover, in light of the substantial evidence of Yeban's intoxication, we believe the jury would have convicted Yeban had Broenner's body-worn camera footage been excluded from trial.

**{¶55}** Thus, even if Broenner's statements about Yeban's activities were testimonial, any violation of Yeban's right to confront Broenner was harmless. Yeban's fourth assignment of error is accordingly overruled.

---

[2] Yeban has not raised an Evid.R. 404(B) challenge to the statement, and we thus consider only whether any potential Confrontation Clause error is harmless, not whether the trial court erred in admitting evidence of a potentially prejudicial other act.

### *Manifest Weight and Sufficiency of Evidence*

{¶56} In his fifth assignment of error, Yeban argues that his conviction was not supported by sufficient evidence and was contrary to the manifest weight of the evidence.

{¶57} In reviewing a challenge to the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime had been proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. As to the weight of the evidence, we review whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). We afford substantial deference to credibility determinations because the factfinder sees and hears the witnesses. *See State v. Glover*, 1st Dist. Hamilton No. C-180572, 2019-Ohio-5211, ¶ 30.

{¶58} Yeban first argues that the evidence was insufficient to establish that he was impaired under R.C. 4511.19(A)(1)(a). In support of this argument, Yeban argues that Madyda's testimony as to Yeban's performance on the SFSTs was not credible because it did not perfectly square with how the SFSTs were depicted on Madyda's body-worn camera footage. Yeban therefore argues that the SFST results did not demonstrate impairment.

{¶59} Following the jury's verdict, however, the trial court merged the offenses, and Yeban was convicted of OVI with a breath-alcohol concentration ("BAC") of over 0.17 percent in violation of R.C. 4511.19(A)(1)(h), rather than OVI under R.C. 4511.19(A)(1)(a). Thus, the state need only present sufficient evidence to establish the

requisite BAC, not general impairment. *See State v. Maxey*, 8th Dist. Cuyahoga No. 112981, 2024-Ohio-1279, ¶ 31 ("When counts in an indictment are allied offenses, and there is sufficient evidence to support the offense on which the state elects to have the defendant sentenced, the appellate court need not consider the sufficiency of the evidence on the count that is subject to merger because any error would be harmless."). To this end, through Madyda's testimony, the state introduced evidence that Yeban registered a BAC of .202. This was sufficient to establish the BAC element of the (A)(1)(h) subsection.

**{¶60}** Yeban further contends the evidence was insufficient to prove that he was operating the vehicle, an essential element of OVI generally. As defined by the OVI statutes, the term "operate" means "to cause or have caused movement of a vehicle[.]" R.C. 4511.01(HHH). "The past tense indicates an action already completed. For purposes of R.C. 4511.19, whether the defendant caused movement of the vehicle is a fact that may be proved by circumstantial evidence, which inherently possesses the same probative value as direct evidence." (Internal citations omitted.) *State v. Anderson*, 1st Dist. Hamilton No. C-160920, 2017-Ohio-8641, ¶ 16.

**{¶61}** To establish operation, the state presented evidence that Yeban was not awake while sitting in the driver's seat of a car that was running. The car had gone off the road and over a curb and was parked in the grass with the back end of the car in the street. Yeban said that he had been at a movie and had driven a woman home. From these facts, the jury could reasonably infer that Yeban had moved the vehicle to that location. Yeban's conviction was therefore supported by sufficient evidence of operation.

**{¶62}** As to the weight of the evidence, Yeban contends that his version of events, in which he denied driving the car, was more credible than any inference to be

drawn that he operated the vehicle. Ultimately, however, determinations of credibility rest with the jury, because the factfinder sees and hears the witnesses firsthand. *State v. Dale*, 1st Dist. Hamilton No. C-230474, 2024-Ohio-2001, ¶ 13.

**{¶63}** As such, based on our review of the record, we cannot say that this is "the exceptional case in which the evidence weighs heavily against the conviction." *See Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Therefore, Yeban's conviction was not against the manifest weight of the evidence.

**{¶64}** We accordingly overrule Yeban's fifth assignment of error.

### *Improper Sentencing Considerations*

**{¶65}** Finally, in his first assignment of error, Yeban argues that the trial court erred by imposing the maximum possible sentence of 180 days in jail. More specifically, Yeban contends that the trial court did not consider the requisite sentencing factors in R.C. 2929.22 and 2929.24 before imposing sentence and that he did not commit the worst form of the offense as required to justify a maximum sentence under R.C. 2929.22(C).

**{¶66}** "A misdemeanor sentence will not be reversed absent a showing that the trial court abused its discretion. An abuse of discretion means more than a mere error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable." *State v. Frazier*, 158 Ohio App.3d 407, 2004-Ohio-4506, 815 N.E.2d 1155, ¶ 15 (1st Dist.). When a misdemeanor sentence is within the statutory limits, the trial court is presumed to have considered the required factors, absent a showing to the contrary by the defendant. *Id.*

**{¶67}** R.C. 2929.22(B)(1) sets forth the following factors for a trial court to consider in determining an appropriate sentence for a misdemeanor offense:

(a) The nature and circumstances of the offense or offenses;

20

(b) Whether the circumstances regarding the offender and the offense or offenses indicate that the offender has a history of persistent criminal activity and that the offender's character and condition reveal a substantial risk that the offender will commit another offense;

(c) Whether the circumstances regarding the offender and the offense or offenses indicate that the offender's history, character, and condition reveal a substantial risk that the offender will be a danger to others and that the offender's conduct has been characterized by a pattern of repetitive, compulsive, or aggressive behavior with heedless indifference to the consequences;

(d) Whether the victim's youth, age, disability, or other factor made the victim particularly vulnerable to the offense or made the impact of the offense more serious;

(e) Whether the offender is likely to commit future crimes in general, in addition to the circumstances described in divisions (B)(1)(b) and (c) of this section;

(f) Whether the offender has an emotional, mental, or physical condition that is traceable to the offender's service in the armed forces of the United States and that was a contributing factor in the offender's commission of the offense or offenses;

(g) The offender's military service record.

**{¶68}** "[T]he court may consider any other factors that are *relevant* to achieving the purposes and principles of sentencing set forth in section 2929.21 of the Revised Code." (Emphasis added.) R.C. 2929.22(B)(2).

{¶69} Additional considerations apply for maximum terms of incarceration. In that regard, a court may only impose the longest jail term authorized on offenders "who commit the worst forms of the offense or upon offenders whose conduct and response to prior sanctions for prior offenses demonstrate that the imposition of the longest jail term is necessary to deter the offender from committing a future criminal offense." R.C. 2929.22(C). "However, a trial court is not required to make 'on-the-record findings to support the imposition of a maximum sentence' for a misdemeanor." *State v. Adkins*, 2d Dist. Clark No. 2019-CA-45, 2020-Ohio-3296, ¶ 13.

{¶70} On a silent record, reviewing courts often presume that trial courts considered the proper statutory criteria for a misdemeanor sentence. *State v. Brooks*, 7th Dist. Mahoning No. 05 MA 31, 2006-Ohio-4610, ¶ 23. That presumption, however, is destroyed when the trial court introduces an improper factor into the maximum sentencing determination. *Id.* at ¶ 26. In *State v. Brooks*, for example, the trial court indicated at the sentencing hearing that it was imposing a maximum jail term based upon its assessment that the defendant was lying in court. *Id.* at ¶ 25-26. This constituted an abuse of discretion because the trial court's perception as to the defendant's truthfulness fell outside the R.C. 2929.22(C) criteria for maximum sentences. *Id.* at ¶ 26.

{¶71} Here, the trial court imposed the maximum sentence for a first-degree misdemeanor. *See* R.C. 2929.24(A)(1). Although the trial court was not required to do so, it explained its rationale in some detail. While initially describing Yeban's offense as an "egregious violation" and highlighting the risk to other drivers posed by Yeban's conduct, the trial court ultimately concluded that it would sentence Yeban to a maximum jail term, rather than community control, based on two factors unrelated

to the offense itself: (1) Yeban's perceived lies to the jury; and (2) Yeban's expression of sovereign citizen viewpoints. In that regard, the trial court stated:

> The jury ultimately concluded clearly that you lied to the jury, concocting a completely convenient, self-serving, and entirely unsupported claim from the witness stand for the first time.
>
> The defendant has made clear he does not recognize the legitimacy of the court or the authority of the court. He absolutely accepts no responsibility for his conduct, no recognition whatsoever that he did anything wrong, no remorse. There's no recognition that he's even bound by any of the law that applies to anyone in the state of Ohio.
>
> As such, the Court cannot put him on probation as he does not recognize any authority of the court, and therefore, will not abide by the terms of the community control.

**{¶72}** This explanation makes it clear that the trial court contemplated community control as the appropriate punishment for Yeban's conduct—likely given Yeban's perfectly clean record prior to this offense and current employment, but elected instead to sentence him to 180 days in jail.[3] It did not do so, however, because it determined that Yeban committed the worst form of OVI or because Yeban's response to prior criminal punishments made him likely to commit another crime. Instead, it impermissibly weighed Yeban's perceived lying and Yeban's proclamation that he was a sovereign citizen rather than the criteria set forth in R.C. 2929.22(C). *See Brooks* at ¶ 25-26.

---

[3] We note that R.C. 4511.19(G)(1)(a)(ii) requires a minimum jail term of three days for OVI.

{¶73} As in *Brooks*, the consideration of factors outside the statutory factors destroyed the presumption that the trial court weighed the appropriate criteria in reaching its sentence. The inclusion of maximum sentence factors outside those defined by the legislature in R.C. 2929.22(C) constitutes an abuse of discretion. *See Brooks*, 7th Dist. Mahoning No. 05 MA 31, 2006-Ohio-4610, at ¶ 26. We therefore sustain Yeban's fifth assignment of error, reverse the trial court's imposition of the maximum 180-day jail term, and remand the matter to the trial court for resentencing.

### *Conclusion*

{¶74} Having thoroughly reviewed the record of Yeban's conviction for OVI, we affirm the finding of guilt under R.C. 4511.19(A)(1)(h), dismiss his appeal as it relates to his conviction under R.C. 4511.19(A)(1)(a), and reverse his 180-day sentence. This cause is remanded to the trial court for resentencing consistent with the principles of R.C. 2929.21 and 2929.22.

> Judgment affirmed in part, reversed in part, appeal dismissed in part,
> and cause remanded.

BOCK, P.J., concurs.
ZAYAS, J., concurs in part and dissents in part.

ZAYAS, J., concurring in part and dissenting in part.

{¶75} I agree with the majority's resolution of the assignments of error challenging the conviction. I dissent from the majority's decision to reverse the sentence because the majority disregards the trial court's worst-form-of-the-offense determination and improperly substitutes its judgment for that of the trial court.

{¶76} Under R.C. 2929.22(C), a court may impose the longest jail term authorized on offenders "who commit the worst forms of the offense or upon offenders whose conduct and response to prior sanctions for prior offenses demonstrate that the imposition of the longest jail term is necessary to deter the offender from committing

a future criminal offense." The court imposed the maximum sentence after finding the offense was an "egregious violation" and highlighted the seriousness of Yeban's conduct.

{¶77} The court accurately remarked that driving while impaired is dangerous and causes risks of harm to others. *See, e.g., State v. O'Malley*, 169 Ohio St.3d 479, 2022-Ohio-3207, 206 N.E.3d 662, ¶ 93 ("The drunk driver essentially plays Russian roulette every time he or she drives on the road while impaired."); *Missouri v. McNeely*, 569 U.S. 141, 160, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013) ("drunk driving continues to exact a terrible toll on society"). The court, exercizing its statutory discretion, found that Yeban committed the "worst form of the offense" because he lost control of his vehicle, posing a serious risk of harm to innocent people on the road and their property, exhibited a lack of remorse, had a high level of impairment as exhibited by his conduct and breath-test result, was unconscious behind the wheel, and failed to control his vehicle. *See State v. Mushrush*, 135 Ohio App.3d 99, 110, 733 N.E.2d 252 (1st Dist.1999) (The phrase "worst form of the offense" is not defined by statute and it is left primarily to the trial court's discretion to determine its meaning.). Our only duty in reviewing the sentence is to determine whether the court abused its discretion. *Frazier*, 158 Ohio App.3d 407, 2004-Ohio-4506, 815 N.E.2d 1155, at ¶ 15. We may not "substitute our judgment for the discretion exercised by the trial court." *See Mushrush* at 110. Here, upon review of the entire record, the court did not abuse its discretion.

{¶78} Inexplicably, the majority ignores the trial court's worst-form-of-the-offense finding, improperly substitutes its own judgment, and determines the sentence was actually based on "(1) Yeban's perceived lies to the jury; and (2) Yeban's expression of sovereign citizen viewpoints." Then the majority concludes that those

two factors were unrelated to the offense and impermissible under R.C. 2929.22. The majority is wrong.

{¶79} The Ohio Supreme Court has held that "when a sentencing judge is the same judge who presided over the defendant's trial, the defendant's act of lying under oath is a factor that may be considered along with other pertinent factors when imposing sentence." *State v. O'Dell*, 45 Ohio St.3d 140, 148, 543 N.E.2d 1220 (1989). The court further explained "the defendant's truthfulness or lack thereof while testifying on his own behalf is '* * * probative of his attitudes toward society and [his] prospects for rehabilitation * * *.' " *Id.* at 147, citing *United States v. Grayson*, 438 U.S. 41, 50, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978). *See State v. Staples*, 12th Dist. Butler No. CA2006-10-259, 2007-Ohio-7072, ¶ 35 (A defendant's act of lying while under oath is probative of his prospects for rehabilitation and a factor that may be considered when imposing sentence.); *State v. Black*, 9th Dist. Wayne No. 19AP0013, 2019-Ohio-5017, ¶ 16 (It is proper for a sentencing court to consider evidence heard during the trial, including the defendant's truthfulness and demeanor, because it is probative of rehabilitation.).

{¶80} Here, the court properly considered Yeban's untruthful testimony when imposing sentence. *See O'Dell* at 147-148. The majority's reliance on *Brooks* is misplaced because the trial court in *Brooks* failed to make the requisite statutory maximum sentencing findings before imposing a maximum sentence. *See Brooks*, 7th Dist. Mahoning No. 05 MA 31, 2006-Ohio-4610. In *Brooks*, the defendant was charged with receiving stolen property, a motor vehicle, and pled no contest to a reduced charge of theft. *Id.* at ¶ 3, 16. During the sentencing, Brooks claimed that he had never been in the car. *Id.* at ¶ 5. The trial court imposed a maximum sentence

absent a determination that Brooks committed the worst form of the offense or that his response to a prior offense demonstrated a maximum sentence was necessary to deter him from committing future crimes. *Id.* at ¶ 16. Instead, the court "expressly admitted that appellant would be 'maxed out' due only to the court's belief that he was lying and that the court would not have sentenced him so harshly in the absence of this perceived lie." *Id.* at ¶ 25. Consequently, the imposition of a maximum jail term was not in accordance with the statutory criteria, and the sentence was an abuse of discretion. *Id.* at ¶ 29.

{¶81} Unlike *Brooks*, here, the trial court found that Yeban committed the worst form of the offense as required by R.C. 2929.22(C) prior to imposing a maximum sentence. Moreover, as previously discussed, the court properly considered Yeban's untruthful testimony when imposing the sentence. *See O'Dell* at 147-148.

{¶82} Furthermore, a trial court "shall consider" any relevant statements made by the defendant in imposing a misdemeanor sentence. *See* R.C. 2929.22(D) ("A sentencing court shall consider any relevant oral and written statement made by the victim, the victim's representative, the victim's attorney, if applicable, the defendant, the defense attorney, and the prosecuting authority regarding sentencing for a misdemeanor."). Thus, the court properly considered Yeban's testimony and statements insisting that he committed no crime, is not "subject to any penalty," and repeatedly refusing to "yield authority" to the court. *See id.*

{¶83} Upon a review of the entire record, Yeban has failed to establish that the trial court did not consider the relevant statutory factors in imposing sentence. Accordingly, the trial court did not abuse its discretion in sentencing Yeban to a maximum sentence, and I would affirm the judgment of the trial court.

Please note:

The court has recorded its own entry on the date of the release of this opinion.