[Cite as *State v. Anderson*, 2024-Ohio-3118.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240023 |
| | | TRIAL NO. B-2302051 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| STANLEY M. ANDERSON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed and Cause Remanded

Date of Judgment Entry on Appeal: August 16, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Norbert Wessels*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Timothy J. McKenna*, for Defendant-Appellant.

**KINSLEY, Judge.**

{¶1} Defendant-appellant Stanley Anderson appeals his conviction for discharge of a firearm on or near prohibited premises. Because the conviction is supported by the sufficiency and weight of the evidence, and because Anderson's trial counsel was not remiss in omitting to procure an expert reconstructionist, we uphold the conviction. However, because the judgment entry does not reflect the sentence announced in open court, we remand for the limited purpose of correcting the sentencing entry.

### *Factual and Procedural Background*

{¶2} Around 5:23 p.m. on May 4, 2023, a man was driving home from work on the interstate in Cleves, Ohio. The man testified he proceeded on an entrance ramp to southbound Interstate 275 when he noticed a white Kia quickly approach and closely ride his rear bumper. Once their vehicles cleared the bend in the entrance ramp, the man got over to allow the Kia to pass. There were no other vehicles around at the time.

{¶3} The vehicles soon approached a section of highway where other vehicles were merging onto Interstate 275. The man testified he reentered the passing lane behind the Kia to make room for the merging vehicles. According to the man, the driver of the Kia then "brake checked" his vehicle, causing the man to lose control and forcing him back into the lanes with merging traffic. Fortunately, the man's vehicle did not collide with any other vehicles in the process.

{¶4} The man caught up to the Kia to obtain its license plate number because he wanted to report the driver, an individual later identified as Stanley Anderson. Believing Anderson was attempting to evade him, the man maneuvered his vehicle in

front of the Kia. The man testified that he looked in his side-view mirror at that time and saw Anderson holding a black pistol out of his driver's side window. According to the man, Anderson fired two shots. Believing he was the target, the man immediately ducked down in his seat. Neither the man's vehicle nor the man himself were struck by any bullets.

{¶5} Around this time, Deputy Alex Grasso of the Hamilton County Sheriff's Office was parked on a median on Interstate 275 near the Kilby Road exit. The man testified he jumped the median and approached Grasso's cruiser. The man told the deputy Anderson had shot at him on the highway. Grasso pursued and stopped Anderson at the end of the Kilby Road exit.

{¶6} Grasso testified he made contact with Anderson and asked what happened. According to Grasso, Anderson replied that it was road rage and nothing more. Anderson initially denied having a gun in the Kia, but later admitted to it. Grasso testified Anderson admitted to firing a single round into the median but denied firing at the man in the other car. Grasso retrieved a black Tisas .45-caliber handgun from beneath the front passenger seat of the Kia near the rear floorboard. The firearm contained a magazine housing six live rounds of ammunition and held a round in the chamber.

{¶7} Anderson was indicted on one count of discharge of a firearm on or near prohibited premises in violation of R.C. 2923.162(A)(3), a felony of the third degree, accompanied by possession and brandishing specifications. The indictment further levied a charge of improperly handling firearms in a motor vehicle in violation of R.C. 2923.16, a felony of the fourth degree.

{¶8} Following a bench trial, the court found Anderson guilty as charged. Anderson was sentenced to a term of nine months in prison on the discharge of a firearm count and a mandatory, consecutive, 36-month term on the brandishing specification. The court merged the possession specification into the brandishing specification and merged the improper handling count into the discharge of a firearm count for purposes of sentencing. This resulted in an aggregate prison term of 45 months. Anderson timely appealed.

## Sufficiency of the Evidence

{¶9} In his first assignment of error, Anderson challenges the sufficiency of the evidence supporting his felony conviction for discharge of a firearm on or near prohibited premises.

{¶10} To assess whether a conviction is supported by sufficient evidence, we ask whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Yeban*, 2024-Ohio-2545, ¶ 57 (1st Dist.), citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶11} R.C. 2923.162 proscribes the offense of discharge of a firearm on or near prohibited premises. Anderson was convicted of a violation of subsection (A)(3), which provides that "[n]o person shall . . . [d]ischarge a firearm upon or over a public road or highway." A violation of this subsection constitutes a felony of the third degree where the offender's conduct "created a substantial risk of physical harm to any person or caused serious physical harm to property[.]" R.C. 2923.162(C)(2). In the absence of such harm, the offense constitutes a misdemeanor of the first degree. R.C. 2923.162(C)(1).

4

{¶12} The parties stipulated to the operability of the Tisas .45-caliber handgun at trial. In addition, the parties do not dispute that Anderson fired a gun on a public highway. Rather, Anderson argues the evidence does not support the conclusion that his act of firing the pistol on the highway created the requisite risk of physical harm to persons or caused serious physical harm to property to support a felony conviction. If accurate, the offense would be a misdemeanor of the first degree, thereby removing the specifications and mandatory prison time.

{¶13} To begin, the record clearly does not support a conviction for the enhanced offense on the grounds that the shooting "caused serious physical harm *to property*." (Emphasis added.) *See* R.C. 2923.162(C)(2). While Anderson maintained he fired into a median, Grasso testified another officer examined the median and did not observe any damage to it. Nor does the record support that the other driver's vehicle sustained any damage from the incident.

{¶14} Regarding the risk of harm to persons, R.C. 2901.01(A)(8) defines "substantial risk" as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." Anderson argues his act of firing a gun into the highway median created only a speculative risk of physical harm to persons. After thoroughly scrutinizing the facts and circumstances of the case, we disagree.

{¶15} The other driver initially testified Anderson was not aiming the firearm in any particular direction. Rather, it appeared more like Anderson was showcasing the firearm to scare him. The man assumed Anderson was firing at him, but he admittedly did not see whether the gun was trained on him or "if Anderson shot up in

5

the air or what." After he ducked down, the other driver did not look in the side-view mirror again or look behind him to view the gun.

{¶16} Even so, it is not speculative to conclude that Anderson's actions created a strong possibility that the man in the other vehicle or another driver on the road could have sustained physical harm as a result of the shooting. The other driver's testimony established that Anderson was just feet from the man's bumper when he fired off at least one shot. The other driver could have been struck, either directly or by a ricochet of the bullet off concrete or asphalt. In addition, the incident took place during rush hour. One of the many other motorists on the road at the time could have been struck by the one or two rounds discharged by Anderson, or a ricochet thereof, even discharged into a median. As the Eighth District Court of Appeals reasoned, "[t]he act of shooting in an area where individuals are located and in the range of the shooter creates a substantial risk of physical harm." *State v. Spates*, 2015-Ohio-1014, ¶ 67 (8th Dist.), citing *State v. Ingram*, 2009-Ohio-1302, ¶ 16 (3d Dist.), and *State v. Windom*, 1997 Ohio App. LEXIS 6006 (10th Dist. Dec. 30, 1997) (finding it reasonable to infer that defendant's conduct of shooting into a group created a substantial risk of serious physical harm to all persons in the group).

{¶17} Here, Anderson's act of firing into the highway median similarly created a substantial risk of physical harm to the other driver and to anyone traversing the highway around this time. Again, the incident took place during rush hour. The one or two rounds fired by Anderson, or a ricochet of a shot toward the median, could have struck other passing drivers, including the driver who testified at trial.

{¶18} The record establishes there were vehicles in the vicinity around the time of the shooting. The evidence depicted this section of Interstate 275 as consisting

of three lanes in each direction separated by a median. Grasso described the traffic at the time as "medium to heavy." Indeed, the deputy testified he was unable to hear the shots fired over the din of traffic. And, as the trial court noted, there were cars visible in the background on Grasso's body-worn camera footage, which was admitted as an exhibit at trial. While the footage did not commemorate the precise traffic surrounding Anderson's vehicle when he discharged the firearm, the footage was recorded sufficiently close in time to inform traffic conditions at the time. These facts and circumstances sufficiently support Anderson's conviction for the felony offense of discharge of a firearm on or near prohibited premises.

{¶19} Anderson's first assignment of error is overruled.

### *Manifest Weight of the Evidence*

{¶20} In his second assignment of error, Anderson challenges the weight of the evidence supporting his conviction for discharge of a firearm on or near prohibited premises.

{¶21} A manifest weight challenge requires us to review whether the trier of fact created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *Yeban*, 2024-Ohio-2545, at ¶ 57 (1st Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387 (1997). Mindful that the trier of fact sees and hears the witnesses during trial proceedings, we afford substantial deference to the trier's credibility determinations. *See State v. Glover*, 2019-Ohio-5211, ¶ 30 (1st Dist.). Accordingly, reversal is warranted "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

**{¶22}** Both Anderson and the state argued sufficiency and manifest weight together in their briefs. We analyze the latter separately only to acknowledge two inconsistencies in the evidence. One concerned whether Anderson fired one or two shots. The trial court ascribed greater weight to the other driver's recollection of two shots. Regardless, Anderson admitted to discharging at least one shot across the interstate. One shot is all that is required to support a guilty finding under the facts and circumstances of this case. The number of shots could have affected the felony enhancement analysis, to be sure. On this record, however, whether the firing of shots created a substantial risk of physical harm to any person did not hinge upon one versus two shots. Therefore, this conflict in the evidence did not bear heavily on the outcome of the case.

**{¶23}** Another potential inconsistency surrounded the number of rounds of live ammunition retrieved from the firearm seized from the Kia. The testimony on this subject was less than clear. However, regardless of the correct number, it remains undisputed that the firearm was indeed loaded and Anderson admitted to discharging a shot. This discrepancy is thus of no moment.

**{¶24}** These minor irregularities aside, the remainder of the record supports the trial court's verdicts from a manifest weight standpoint. *See, e.g., Ingram*, 2009-Ohio-1302, at ¶ 16 (3d Dist.). The testimony establishes that Anderson fired at least one shot from an operable, loaded firearm across a public interstate. *See id.* The trial court's guilty finding on this front did not represent a manifest miscarriage of justice. Accordingly, Anderson's conviction for discharge of a firearm on or near a prohibited premises does not defy the manifest weight of the evidence.

**{¶25}** The second assignment of error is overruled.

### *Ineffective Assistance of Counsel*

**{¶26}** In his third assignment of error, Anderson argues trial counsel was ineffective for failing to call an expert to reconstruct the shooting scene to dispel that his actions created a substantial risk of harm to any person.

**{¶27}** Trial counsel will not be considered ineffective unless (1) counsel's performance was deficient and (2) the defendant suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989). The failure to satisfy either prong is fatal to an ineffective assistance claim. *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000).

**{¶28}** Deficient performance is that which falls below an objective standard of reasonableness. *Strickland* at 687-688. Likewise, a defendant is prejudiced by counsel's performance only if there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different. *Id.* at 694.

**{¶29}** Here, Anderson offers nothing material to demonstrate how or why a reconstructionist could have offered testimony informing the substantial risk of harm beyond the evidence already before the trial court. In fact, no evidence of what a reconstructionist would have opined appears in the record. Thus, at this stage of the case, any testimony a reconstructionist might have provided is purely speculative, and Anderson cannot demonstrate that the outcome of the proceedings would have been different but for counsel's omission to call such an expert. *See State v. McHenry*, 2018-Ohio-3383, ¶ 25 (1st Dist.).

**{¶30}** Anderson's third assignment of error is overruled.

*Sentencing*

**{¶31}** In his fourth assignment of error, Anderson maintains the trial court's judgment entry fails to reflect the sentence announced in open court. The state insists the assignment of error is moot because the trial court's nunc pro tunc entry cured any defects.

**{¶32}** The transcript of proceedings indicates the sentence announced in open court on Count 1 for discharge of a firearm included a nine-month term of imprisonment on the underlying offense and a mandatory, consecutive, 36-month term on Specification 2 (brandishing) to Count 1. The court merged Specification 1 (possession) to Count 1 into Specification 2 to Count 1 for purposes of sentencing. The court similarly merged Count 2 for improper handling into Count 1 for purposes of sentencing. This yielded an aggregate term of incarceration of 45 months.

**{¶33}** A review of the initial judgment entry of sentence reveals it did not accurately reflect the sentence announced in open court. Specifically, the entry omitted the nine-month term of imprisonment on Count 1 and imposed only the 36-month term on Specification 2 to Count 1 for a sentence of 36 months in toto. The entry further purported to impose the 36-month term concurrently with another, unnamed sentence.

**{¶34}** In a commendable attempt to rectify the errors, the trial court issued a nunc pro tunc entry on February 23, 2024. By that time, however, Anderson had already filed his notice of appeal. While Crim.R. 36 permits a nunc pro tunc entry to be filed "at any time," the filing of a notice of appeal divests a trial court of jurisdiction to do so. *See State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio St.2d 94, 97 (1978). Indeed, once an appeal is perfected, "the trial court loses

jurisdiction except to take action in aid of the appeal." *State v. Washington*, 2013-Ohio-4982, ¶ 8, quoting *In re S.J.*, 2005-Ohio-3215, ¶ 9; *see also State ex rel. Rock v. School Emps. Retirement Bd.*, 2002-Ohio-3957, ¶ 8 ("once an appeal is perfected, the trial court is divested of jurisdiction over matters that are inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment").

**{¶35}** In view of these legal principles, we hold that the trial court lost jurisdiction to issue the nunc pro tunc entry once Anderson filed his notice of appeal from the trial court's judgment on January 11, 2024. This renders the trial court's February 23, 2024 nunc pro tunc entry a nullity. *State v. Alford*, 2012-Ohio-3490, ¶ 11 (2d Dist.), citing *State v. Ward*, 2010-Ohio-1794, ¶ 45 (2d Dist.). We note, however, that the trial court is free to simply refile the nunc pro tunc entry upon remand from this court. *See State v. Donley*, 2017-Ohio-562, ¶ 173 (2d Dist.).

**{¶36}** The fourth assignment of error is sustained.

### *Conclusion*

**{¶37}** In sum, the record contains sufficient evidence supporting Anderson's conviction and that conviction is not against the manifest weight of the evidence. In addition, defense counsel was not ineffective in failing to obtain an expert reconstructionist. Accordingly, we affirm the trial court's judgment, but remand for the trial court to issue a nunc pro tunc judgment entry reflecting the correct sentence.

Judgment affirmed and cause remanded.

**BOCK, P.J.,** and **ZAYAS, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.